Crawford v. Read and another.

-----

JAMES C. CRAWFORD *v.* STEPHEN READ and another.

Where one resides alternately in different parishes, and has made no declaration, in the mode prescribed by law, as to his intention to fix his principal establishment, he may be cited in either, at the option of the party interested. C. C. 42, 43, 44, 45. C. P. 166.

Where an endorser who resides alternately in different parishes, and has not declared, in the manner prescribed by law, his intention of fixing his principal establishment in either, is in the habit of receiving his letters and papers at the two post-offices nearest to his different places of residence, a notice of protest sent to either will suffice.

The signature of two witnesses to the protest of a bill or note, is not required by any law. The first section of the act of 14th February, 1821, requires that two witnesses shall attest the entry, made by the notary in his books, of the manner in which notices to the drawers and endorsers have been served or forwarded; but this has nothing to do with the protest itself.

The omission to name the parish in which the post-office is situated to which notice of a protest is sent, is not fatal, provided the post-office be the nearest to the residence of the party notified.

Crawford v. Read and another.

APPEAL from the District Court of Avoyelles, *Campbell*, J.

*Brent* and *O. N. Ogden*, for the appellant.

*Taylor, Swayzé*, and *T. H. Lewis*, contra. The judgment below, discharging Read, is correct. Notice of protest should have been forwarded to the office nearest the residence of Read. Civil Code, 42, 43, 46. Toullier, Bruss. ed. of 1829, Nos. 362, 363, 364, 367, 372. Story, Conflict of Laws, sections 41, 43, 44, 45, 46. 11 La. 178. 1 Rob. 107. 3 Rob. 4. The protest is defective, for the want of the signatures of the witnesses. B. & C.'s Dig. 41, 43. 5. Mart. N. S. 511. 19 La. 449. The notice should have been addressed to the defendant at his *domicil*, or *usual place of residence*; and the certificate of the notary should have stated so. The statute must be strictly pursued. B. & C.'s Dig. 41. 43. 3 Mart. N. S. 465. 6 Mart. 394. 3 Rob. 164.

MORPHY, J. This action is brought on a note of $4333 33, drawn by Jos. H. Boone to the order of Stephen Read, by whom, and his co-defendant Toler, it is endorsed, payable on the first of January, 1842. The defendants filed separate answers. Toler pleaded the general issue, payment, and the insufficiency of the protest and notice; while the other defendant, Read, put in a plea to the jurisdiction of the lower court, alleging that his domicil was not in the parish of Avoyelles, where process of citation was served, but in the parish of St. Landry. This plea having been overruled, Read answered to the merits, by denying any liability or indebtedness to the plaintiff. At this stage of the proceedings Jesse D. Wright intervened in the suit, representing that, since its inception, all the rights, title, and interest of the plaintiff therein, and in the note sued on, had been seized under execution, and purchased by him at a sheriff's sale. There was a judgment below in favor of the intervenor against Toler, and one in favor of his co-defendant, Read, against the intervenor. From this last judgment the latter appealed.

The first question to which our attention is called, is that presented by the plea to the jurisdiction of the court. A number of witnesses were examined on the trial of this exception. Their testimony shews that, in the spring of 1838, Read, who had always resided on his plantation on Bayou Huffpower, in Avo-

yelles, purchased a piece of land in the pine woods on Bayou Chicot, in the parish of St. Landry, built a house, moved into it with his family, and has lived there ever since; that he never made any declaration of his intention to change his domicil before the judge of either of the parishes; that he continued to have his plantation on Bayou Huffpower, in Avoyelles, to which he went frequently, but never resided there any length of time; that he generally returned on the same day, or a few days after, to his place on Bayou Chicot; that the plantation house in Avoyelles had none of the comforts of life about it, and is destitute of furniture and bedding; that for the last three or four years his family has almost constantly resided on Bayou Chicot, although they occasionally visited the plantation, and sometimes remained there a week or ten days; that whenever Read leaves Bayou Chicot for New Orleans, or any other place, he returns generally there; sometimes he returns to the plantation in Avoyelles; and that when he went to purchase the land on Bayou Chicot, he mentioned to the neighbors his intention of making that place the permanent residence of his family. On the other hand it is shown, that since this apparent change of residence, Read continued to consider himself as domiciliated in Avoyelles. In a petition for an order of seizure and sale, filed in 1839, he styled himself "a resident of, and domiciled in the parish of Avoyelles." At the July election of 1840, he voted in that parish for a senator and representative in the state legislature. He served there as a juror, and at the presidential election of 1840, he was appointed. and acted as a commissioner for the Avoyelles prairie precinct. In November, 1841, he declared to a neighbor enquiring about his change of residence, that although his family resided on Bayou Chicot, his plantation was his home, where he would always be found. Some witnesses say that he was much in the habit of spending his time between both places, and that when he was not to be found at one of them, he was looked for at the other; and that he does not now reside more at Bayou Chicot than he did three or four years ago. It is further shown that he never voted, nor served as a juror in the parish of St. Landry. With this evidence before us, we are not prepared to say, that the inferior

judge erred, in overruling Read's declinatory exception. Article 43 of the Civil Code, provides that " a change of domicil is produced by the act of residing in another parish, *combined* with the intention of making one's principal establishment there." Article 44 declares an *express declaration*, made before the judges of the parishes from which and to which he intended to remove, to be the legal proof of such intention; and by article 45, if no such declaration has been made, the proof of this intention must depend *upon circumstances.* Article 42 provides that if any one resides alternately in several places, and nearly as much in one as in another, and has not made the declarations required by law, any one of said places may be considered as his principal establishment, at the option of the persons whose interests are thereby affected." Under the evidence, and these provisions of law, we are of opinion that the defendant could have been legally cited in either of the parishes of Avoyelles or St. Landry. Code of Practice, art. 166.

On the merits, it is contended that the notice of protest given to Read is insufficient, as it was forwarded to him at the Holmesville post-office, while there is a post-office at Chicot, much nearer to his residence in St. Landry. To this it would suffice to answer, that Avoyelles can lawfully be considered as his domicil, and that the Holmesville post-office is the nearest to it; but were Bayou Chicot to be considered as the usual residence of the defendant, it is by no means clear that the notice directed to Holmesville would be bad. The evidence shows that up to the institution of this suit, Read was in the habit of receiving his letters and papers at the office at Holmesville; that it is about fifteen miles from his house at Chicot, and about three miles from his plantation; that it lies on the road leading from the one to the other, and that Read, who is always travelling from and to his plantation, passes within a few yards of the office, in which he never suffers his papers or letters to remain long, but either calls himself, or sends for them frequently; and that he never directed the postmaster to forward them to the Chicot office, which is a little over a mile from his house, and at which he also receives letters and papers. Under these circumstances, coupled with the acts

and declarations of Read, tending to produce the impression that his domicil was yet in Avoyelles, we would not hesitate to consider the notice as sufficient. *Commercial Bank of Natchez* v. *Thompson L. King and others,* 3 La. 243. In *The Exchange Bank* v. *Boyce,* (3 Rob. 307), we held, that " where a party resides alternately at two places, and goes frequently from one to the other, notice directed to either is good. See also *Mainer* v. *Spurlock et al., ante* p. 161, and *Mead* v. *Carnal,* 6 Rob. 73.

It is next urged that the protest is defective on its face, for want of the signatures of two witnesses to it. We know of no law rendering this necessary. The statute of 1821 concerning bills of exchange, promissory notes, &c., requires two witnesses to attest the entry made by the notary in his book, as to the manner in which notices to the drawers and endorsers have been served or forwarded; but this, we apprehend, has nothing to do with the protest. 16 La. 563. In this case we have before us a certified copy of the protest, and of the certificate *added to the* protest, attested by two witnesses, and showing the manner in which the notices were served. This, we think, is sufficient. B. & C.'s Dig. 41.

It is, finally, objected, that the notice in this case is not addressed to the defendant, at his *domicil,* or *usual place of residence,* and that the certificate of the notary should have so stated it. We have held that the omission to name the parish in which is situated the post-office to which notice is directed, is not fatal, provided the post-office be the nearest to the residence of the party. *Nott's Executor* v. *Beard,* 16 La. 310.

On the back of the note, annexed to the plaintiff's petition, there is a credit endorsed for $450, dated January 5th, 1841.

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed, and it is ordered and decreed that the intervenor do recover of Stephen Read, the sum of $4333 33, with ten per cent interest per annum from the 4th of January, 1842, until paid, with costs of protest, and of suit in both courts to be taxed, subject to a credit of $450, paid on the 5th of January, 1841.